UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LLOYD SPRINGFIELD,

        Plaintiff,                 Case. No. 2:22-cv-10344

v.                                     Hon. Nancy G. Edmunds

UNKNOWN TROTT, et al.,

        Defendants.
_____/

**OPINION AND ORDER OF PARTIAL SUMMARY DISMISSAL**

Plaintiff Lloyd Springfield, currently confined at the Macomb Correctional Facility in Lenox Township, Michigan, filed this *pro se* civil rights complaint against six Michigan Department of Corrections employees in their individual capacities pursuant to 42 U.S.C. § 1983. He has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Plaintiff alleges Defendants filed false misconduct charges against him and caused the loss of his job as a baker in retaliation for his complaints about contaminated food being served to prisoners. He also alleges he was sent to administrative segregation in retaliation for his First Amendment-protected conduct.

As explained below, the Court will dismiss Defendants McKinney and Greason for Plaintiff's failure to state a claim against them upon which relief may be granted. Plaintiff's lawsuit as to the other defendants may proceed.

**I.    BACKGROUND**

Plaintiff Springfield has sued six MDOC employees in their individual capacities: Food Service Director (FNU) Trott, E9 Food Service Supervisor (FNU) Sundararajan, Lt. (FNU) McCollough, Assistant Deputy Warden (FNU) McKinney, Acting Deputy Warden

Alan Greason, and Corrections Officer (FNU) Michalowicz.[1] Plaintiff alleges that on August 25, 2021, he and two other prisoners, Colven-El and Burns, complained to "an E7 Food Steward" that "old, contaminated food" was going to be served to the prison population. (ECF No. 1, PageID.5.) When no action was taken, the three prisoners complained to Defendant Sundarrajan, who disregarded their complaints. Defendant Trott arrived, and Food Service Supervisor Elward gave him a note containing the names of the three complaining prisoners, stating they were "causing problems." (*Id.*)

Trott told the prisoners the food would not be discarded and that food safety practices were being followed. (*Id.* at PageID.6.) Plaintiff and his two fellow prisoners still complained that the meal should be discarded and something fresh provided in its place. (*Id.*) Trott told the three that if they continued, he "will make sure you regret it." (*Id.* at PageID.6, 29-31.) Plaintiff returned to his housing unit and wrote a grievance on Trott and Sundarrajan for threatening retaliation. (*Id.* at PageID.6.)

Lunch was served that afternoon, and two units of the prison "refused to eat the contaminated meal." (*Id.*) Plaintiff alleges the facility warden tasted the meal, and informed Trott "it wasn't fit for human consumption." (*Id.*) He further alleges Trott and Sundarrajan received corrective actions and were ordered to feed prisoners "something safe and edible." (*Id.*) "Chicken patties were later rushed and served." (*Id.* at PageID.7.)

Food Steward Elward, Trott, and Sundarrajan "openly discussed" whether Plaintiff and the other prisoners should be placed in administrative segregation for inciting a riot by complaining about the unsafe food practices. (*Id.*) Trott told Plaintiff directly that he

---

[1]  In grievances and affidavits, Defendant Michalowicz is referred to as "C/O Lowicz." (ECF No. 1, PageID.27, 39.)

should be in segregation for what he did to them. (*Id.*) Plaintiff asserts every food steward was aware of Trott's and Sundarrajan's threats to "'get rid of'" Plaintiff and the other complaining prisoners. (*Id.*)

On September 9, 2021, Plaintiff reported to work at his job as a baker. Both mixers he needed were inoperable, due to missing or broken attachments. (*Id.*) He requested repairs to the machines, then returned to his unit because he could not perform his job. (*Id.*) The next day, the mixers were still out of service. (*Id.*) Trott and Sundarrajan told him the needed part was on order, and Plaintiff again returned to his housing unit. (*Id.*)

Plaintiff was called back to Food Service the same morning at 9:00 a.m., and was told to prepare "reduced recipes" for the dinner meal. (*Id.* at PageID.7-8.) He asked Sundarrajan whether the mixers had been fixed; they had not. (*Id.* at 8.) Sundarrajan "smirked then ordered Plaintiff to produce the required desserts for the dinner meal as well as the next day's breakfast and dinner meals . . ." (*Id.*) Plaintiff asked whether he was expected "to make 3900 servings of cakes, cookies and cinnamon rolls by hand in one day[,]" as he considered the task impossible. (*Id.*) Trott told Plaintiff that if he did not want to do the work, he could leave, and that he was "done in Food Service." (*Id.*) Sundarrajan issued two Class II misconducts against Plaintiff for disobeying a direct order (DDO) and being insolent. (*Id.* at PageID.33.) Plaintiff again grieved Trott and Sundarrajan for retaliation, noting in his grievance they referred to the prior conflict over spoiled food. (*Id.* at PageID.8, 17.)

Plaintiff alleges a witness overheard Trott and Sundarrajan discussing him, concluding they "no longer had to worry about him snitching to the administration." (*Id.* at 8, 35.) Another baker, Brandon Farnsworth, also refused to work on September 10, 2021,

3

because of the broken mixers. (*Id.* at PageID.32.) Farnsworth was not fired, nor did he receive any disciplinary action for refusing to work. (*Id.*)

Defendant Lt. McCullough found Plaintiff guilty of the September 10 misconducts and imposed a five-day loss of privileges. (*Id.* at PageID.36.) McCullough told Plaintiff "this is what you get" if he complained to the administration, and to "expect more of the same if [he] continued to be a problem." (*Id.* at PageID.20, 22.) Plaintiff grieved McCullough, asserting his findings were based on a "willful desire to punish" him and not on the evidence. (*Id.* at PageID.4.) He argues the order to produce 3,900 desserts by hand, the basis of his DDO misconduct, was not a reasonable order. (*Id.* at PageID.22.)

Plaintiff appealed the misconducts to Defendants Greason and McKinney. (*Id.* at PageID.22-24.) After a month passed without a response, Plaintiff wrote McKinney about the appeal. (*Id.* at PageID.9, 25.) On October 28, 2021, Greason and McKinney interviewed Plaintiff, but claimed not to know about the misconduct or the appeal. However, they "expressed displeasure" at the "'disrespectful tone' of Plaintiff's letter." (*Id.* at PageID.5.) Plaintiff subsequently grieved Greason and McKinney for "actively participating in a retaliation campaign by failing to review or respond" to Plaintiff's appeals. (*Id.*)

On November 4, 2021, Plaintiff stepped out of his cell to use the restroom, but Defendant CO Michalowicz, standing at "base" with Defendant Greason among others, ordered him to return to his cell. (*Id.* at PageID.9.) Plaintiff stated his need was urgent, and someone in the "base" area verbally granted him permission. (*Id.*) As Plaintiff was using the urinal, Michalowicz observed him. He then asked Plaintiff, "[h]ow does it feel being a marked man?" (*Id.* at 10.) Michalowicz charged Plaintiff with disobeying a direct

4

order and arranged for him to be taken to segregation, even though another corrections officer confirmed Plaintiff had been given permission to go to the bathroom. Once in segregation, Plaintiff was strip-searched and tested for drugs, and met with a Security Classification Committee (SCC). (*Id.*) After several hours, although the SCC told Plaintiff he would be elevated to a more severe security level, Plaintiff was returned to the level 2 population. (*Id.*) For a similar infraction, another prisoner was taken to segregation but was not strip-searched, drug-tested, or required to see the SCC. (*Id.*at PageID.10, 44-45.)

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), the court is required to dismiss a prisoner's complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e), 1915A(b); 42 U.S.C. § 1997e(c)). The screening requirement extends to all prisoner civil cases, whether fee-paid or *in forma pauperis*, "as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

A complaint is frivolous and subject to *sua sponte* dismissal under § 1915(e) if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To determine whether a plaintiff has failed to state a claim, a court must "construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." *Wershe*

*v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014) (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such complaints "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must accept a plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Consistent with *Twombly* and *Iqbal*, the Sixth Circuit has observed that "[d]espite the leniency afforded to . . . *pro se* litigant[s], however, our standard of review requires more than the bare assertion of legal conclusions, and thus the complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Neither the Supreme Court nor other courts "have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines*, 404 U.S. at 521) (other citations omitted).

To state a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)) (other citation omitted). In addition, the plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### III.     DISCUSSION

**A. Retaliation standards**

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

Filing grievances against prison officials on one's own behalf is "undisputed[ly]" protected by the First Amendment. *Hill*, 630 F.3d at 472 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). This includes oral complaints; that is, grievances need not be in writing to be protected. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

Next, an adverse action is one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Harbin-Bey*, 420 F.3d at 579 (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (emphasis in original). Even a threat may satisfy this standard, if the threat may deter the protected conduct. *Hill*, 630 F.3d at 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). "[B]ecause 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great to be actionable. *Id*. at 473 (citing *Thaddeus-X*, 175 F.3d at 397). At the pleading stage, a plaintiff must "'merely . . . establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury.'" *Id*. (citing *Bell*, 308 F.3d at 606).

To meet the third prong of *Thaddeus-X*, causation, a plaintiff must allege "that his protected conduct was a motivating factor" for the retaliatory acts. *Maben*, 887 F.3d at

8

262 (quoting *Thaddeus–X*, 175 F.3d at 399); *see also Hill*, 630 F.3d at 475 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)) (adverse action must have been "motivated at least in part" by the protected conduct). "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey*, 420 F.3d at 580 (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). "[T]emporal proximity between protected conduct and retaliatory acts [may] create[e] an inference of retaliatory motive." *Maben*, 887 F.3d at 268 (citations omitted). So may different and unfair treatment of a prisoner based on his protected conduct. *Thomas*, 481 F.3d at 442.

While plaintiffs may rely on circumstantial evidence, they must still provide "specific, nonconclusory allegations" linking their conduct to the defendants' retaliatory acts. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir.2003) (requiring "concrete and relevant particulars").

**B. Analysis**

***1. Defendants McKinney and Greason***

Plaintiff fails to state a claim upon which relief may be granted against Defendants McKinney and Greason. Plaintiff's allegations against these two defendants are premised on their failure to respond to his misconduct appeals. However, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted).

9

Liability will not be established unless "defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts. . ." *Id.*

As a result, Plaintiff's allegation that Greason's and McKinney were "actively participating in a retaliation campaign" (ECF No. 1, PageID.5), through their failure to address his complaints cannot establish "active unconstitutional behavior." *Shehee*, 199 F.3d at 300. Plaintiff provides no other factual support, indirect or otherwise, for his allegation that Greason and McKinney were motivated by retaliatory animus. His allegations are thus conclusory and insufficient. *Harbin-Bey*, 420 F.3d at 580. Defendants Greason and McKinney will be dismissed from the complaint.

### 2. Remaining Defendants

Plaintiff's allegations against the remaining defendants, taken as true and in a light most favorable to him, survive screening at this time. Plaintiff's verbal complaints and grievances were protected conduct under the First Amendment. *Hill*, 630 F.3d at 472; *Maben*, 887 F.3d at 265. The loss of his job, the false misconducts, and the resulting loss of privileges all suffice to demonstrate adverse action under the *Thaddeus-X* test. *See Maben*, 887 F.3d at 267 ("[T]he deprivation of privileges is hardly 'inconsequential'— indeed, they are all that prisoners really have.") Finally, although causation may be demonstrated by circumstantial or indirect evidence, Plaintiff has provided direct evidence of retaliatory motives through the statements of Trott, Sundarrajan, and McCollough linking his protected conduct to their adverse actions.

The complaint against Michalowicz is a closer call. However, at the screening stage, when it is possible a plaintiff may establish facts that prove his claim, dismissal is inappropriate. *Thomas*, 481 F.3d at 442. Defendant Michalowicz sent Plaintiff to

administrative segregation, where he was strip-searched, drug-tested, and threated with a higher security level, which adequately alleges an adverse action. *Hill*, 630 F.3d at 474 (citing *Thaddeus-X*, 175 F.3d at 396; *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005)).

As to causation, the incident with Michalowicz occurred less than a week after Plaintiff pursued the appeal of his misconduct ticket, and temporal proximity may support a finding of retaliatory motive. *Maben*, 887 F.3d at 268. Michalowicz referred to Plaintiff as a "marked man," and had him taken to segregation despite the statement of another corrections officer that Plaintiff had done nothing wrong. (ECF No. 1, PageID.10.) Finally, Plaintiff has alleged (and supported with an affidavit) that he was treated more harshly than other prisoners for a similar offense. (*Id.* at PageID.10, 44-45.) Taken together, Plaintiff's claims against Michalowicz survive screening.

## IV. ORDER

Accordingly, the complaint is SUMMARILY DISMISSED with respect to Defendants Greason and McKinney. 28 U.S.C. §§ 1915(e)(2), 1915A(b).

Plaintiff's claims against the remaining Defendants are not subject to summary dismissal and may proceed.

**SO ORDERED**.

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: March 18, 2022