UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LLOYD SPRINGFIELD,<br>    Plaintiff,<br>    v.<br><br>UNKNOWN TROTT,<br>UNKNOWN SUNDARRAJAN,<br>and UNKNOWN<br>MCCOLLOUGH,<br>    Defendant.<br>_____/ | Case No. 22-10344<br><br>Nancy G. Edmunds<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 43)**

**I.    BACKGROUND**

Plaintiff Lloyd Springfield filed this civil rights case without the assistance of counsel on February 8, 2022.  (ECF No. 7).  Defendants filed a motion for summary judgment on December 11, 2023.  (ECF No. 43).  The motion is fully briefed.  (ECF Nos. 46, 48).  Plaintiff then filed a motion to compel on January 12, 2024, and Defendants responded.  (ECF Nos. 45, 47).  Plaintiff's motion to compel is addressed in a concurrent Order.

This case was referred to the undersigned for all pretrial proceedings.  (ECF No. 12).

For the reasons discussed below, the undersigned recommends that Defendants' motion for summary judgment be **DENIED**.

**II.    FACTS**

Plaintiff is incarcerated in the Michigan Department of Corrections in Lenox Township.  (ECF No. 1, PageID.3).  Defendants were all employed in Lenox.  (ECF No. 1, PageID.3).  Defendant Trott was the Food Service Director ("FSD"), Defendant Sundarrajan was a Food Service Supervisor, and Defendant McCollough was a Lieutenant.  (ECF No. 1, PageID.3).

In his verified complaint, Plaintiff alleges he was retaliated against after he complained about poor food quality in Food Service.[1]  (*Id.* at PageID.1-2).  He claims the retaliatory conduct left him terminated from his work detail in Food Service.  (*Id.*).

On August 25, 2021, Plaintiff, along with two other inmates, complained to a food steward about old and contaminated food being served.  (*Id.* at PageID.5).  When no action was taken in response, they complained to Sundarrajan, who told them "that's the way things are done and weren't likely to change because of . . . complaining."  (*Id.*).  Defendant Trott arrived and a Food Service Supervisor

---

[1] Allegations in a verified complaint have, for summary judgment purposes, the same force as those in an affidavit.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal citations omitted).  Since Plaintiff filed a verified complaint, his allegations will be taken as evidence.

passed him a note containing Plaintiff and the two other inmates' names on it, saying "they are causing problems." (*Id.* at PageID.6).

Trott and Sundarrajan then called Plaintiff to tell him all food safety practices were being followed and that he was overreacting. (*Id.*). Plaintiff was not convinced by this and asked for the present meal to be discarded and something fresh and safe prepared. (*Id.*). Trott and Sundarrajan told him "[i]f you continue down this road, I will make sure you regret it." (*Id.*). Plaintiff submitted a grievance against Trott and Sundarrajan. (*Id.* at PageID.7).

When lunch was served, two units refused to eat the meal. (*Id.* at PageID.6). The Warden tasted the meal and said "it wasn't fit for human consumption." (*Id.*). He spoke with Trott about the quality and origin of the meal, and Trott told him "it was the best Chili Mac he had tasted in 16 years." (*Id.*). The Warden reprimanded Trott and Sundarrajan and ordered that something new and safe be given to the compound. (*Id.*).

The food steward, Trott, and Sundarrajan discussed placing Plaintiff and others in segregation as retaliation for "inciting a riot" about the food quality. (*Id.* at PageID.7). Trott told Plaintiff he "'should be in seg[regation] for what [he] did." (*Id.*).

On September 9, 2021, at 5:00 AM, Plaintiff arrived at his work detail as a baker. (*Id.*). The big mixer he used to bake was inoperable, and he contacted

3

maintenance to fix it. (*Id.*). He looked to the small mixer, and found it was missing the paddle attachment he used to make desserts. (*Id.*). It only had the birdcage attachment, which he said was not meant for desserts. (*Id.*). He spoke with a food steward and returned to his unit "with the understanding that he would be unable to do his job that day." (*Id.*).

The next day Plaintiff arrived to his assignment at 6:00 AM. (*Id.* at PageID.8). Sundarrajan and Trott told Plaintiff that the mixer had not been fixed. (*Id.* at PageID.7). But they told Plaintiff and another inmate to produce desserts for dinner, the next day's breakfast, and dinner, which added up to 3900 servings of cakes, cookies, and cinnamon rolls. (*Id.* at PageID.8, 22, 36). Plaintiff felt as though this was impossible, as he would have to make the desserts by hand or by using the small mixer, which only produced 100-150 servings. (*Id.* at PageID.8). Sundarrajan told him to do what he was told or leave his detail in Food Service and be "laid in."[2] (*Id.* at PageID.8, 23). Plaintiff and the other inmate who was on the same detail returned to their units. Plaintiff submitted a grievance against Trott and Sundarrajan. (*Id.* at PageID.8). Sundarrajan wrote him a "false misconduct . . . for . . . disobeying a direct order and being insolent" and laid him in. (*Id.*).

---

[2] "[A] prisoner who is charged with any misconduct may be temporarily suspended (i.e., 'laid in') from their assignment pending the misconduct hearing." (ECF No. 43, PageID.341) (citing MDOC Policy Directive 05.01.100(JJ).

4

On September 17, 2021, McCollough conducted a hearing for disobeying a direct order and told Plaintiff "[y]ou got yourself in this situation. Expect more of the same if you continue to be a problem," and asked him "[h]ow is the grievance process working out for you so far." (*Id.* at PageID.8, 20).

Plaintiff brought claims of violation of his First Amendment right to not be retaliated for filing grievances against Defendant Trott, Sundarrajan, McKinney, Greason, Michalowicz, and McCollough; violation of due process against McCollough, McKinney, Greason; and abuse of authority against Michalowicz. (ECF No. 1, 12).

Defendant Trott, McCollough, and Sundarrajan, the remaining defendants, bring this motion for summary judgment arguing Plaintiff cannot establish the causal connection between their conduct and the alleged retaliatory conduct. (ECF No. 43, PageID.333). They also claim there were nonretaliatory bases for their conduct and that they did not take an adverse action against Plaintiff. (*Id.*). Finally, they claim they are entitled to qualified immunity for all personal capacity claims. (*Id.*).

III.  **ANALYSIS AND RECOMMENDATIONS**

   A.  <u>Governing Standards</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a

6

reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema*, *N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro*

*se* plaintiff because he "failed to present any evidence to defeat the government's motion").

    B.    <u>Retaliation</u>

Defendants argue Plaintiff's retaliation claim fails because Defendant Trott and Sundarrajan did not take an adverse action against him and because Plaintiff cannot establish a causal connection between Defendant McCollough's hearing decision and any adverse action. (ECF No. 43, PageID.333). Defendants also argue there were nonretaliatory bases for Trott, Sundarrajan, and McCollough's actions. (*Id.*). Finally, all parties argue Trott, Sundarrajan, and McCollough are entitled to qualified immunity.

        i.    Sundarrajan and Trott

A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Richards v. Perttu*, WL 1172634, at *3 (6th Cir. Mar. 19, 2024) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Neither party questions Plaintiff's protected conduct. Inmates have an "undisputed First Amendment right to file grievances against prison officials."

8

*Richards*, WL 1172634, at *3. "Abusive or manipulative use of a grievance system" is not protected conduct, nor are frivolous grievances. *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012). A grievance about "the adequacy of . . . food" is "about one of the major requirements of life" and is not frivolous. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Plaintiff had a right to file his grievances.

An adverse action "is one that is *capable* of deterring a person of ordinary firmness form exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (emphasis original). "*Actual* deterrence need not be shown." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis original). "[T]his element is not an overly difficult one for the plaintiff to meet." *Lappin*, 630 F.3d at 472. Consequently, "unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citation and internal quotation marks omitted).

Plaintiff argues Sundarrajan and Trott took an adverse action against him when they "fired [him] from [his] job." (ECF No. 43-2, PageID.376). He states the "adverse action . . . was being laid-in and terminated from [his] detail." (*Id.*).

Defendants correctly point out that they were not involved in Plaintiff's termination. The prison Classification Director terminates prisoners, and neither Trott nor Sundarrajan decided to terminate Plaintiff. (ECF No. 43-4, PageID.402).

9

But both Defendants did tell Plaintiff "[i]f you don't want to do what you're told you can leave. You're done in food service. You're laid in." (ECF No. 1, PageID.8).

Neither a "'lay-in' nor a job change constitute[s] adverse actions under the law." *Coleman v. Mohlman*, 2020 WL 5648352 (E.D. Mich. Aug. 24, 2020). "[I]n Michigan prisons, there is no right to prison employment because prison administrators have complete discretion regarding prisoner work assignments." *Johnson v. Purdy*, 2019 WL 6912759, at *2 (E.D. Mich. Dec. 18, 2019) (citing *Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011)). Prisoners also have no right to "a particular prison job." *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001).

But a lay in alongside threats of other action may constitute an adverse action. *Hailey v. Crawford*, 2020 WL 6731230, at *4 (W.D. Mich. July 20, 2020) (threat to send Plaintiff to segregation is adverse enough to be actionable) (citing *Hill* 630 F.3d 468 at 472). In *Pasley v. Conerly*, a threat that Plaintiff would be moved "so that he would lose his job" and moved "to a location where his family would not be able to visit him" was an adverse action because the "threat was capable of deterring a person of ordinary firmness from engaging in protected conduct." *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009).

10

Sundarrajan and Trott both told Plaintiff, after he complained about the food quality, "[i]f you continue down this road, I will make sure you regret it." (ECF No. 1, PageID.6). Plaintiff then submitted a grievance. (*Id.*). Trott told Plaintiff he "should be in seg[regation] for what [he] did to [them]," and Trott and Sundarrajan "openly discussed the possibility of placing Plaintiff . . . in segregation . . . in retaliation" for his actions. (*Id.* at PageID.7). Another cook in food service also heard Trott and Sundarrajan discussing how they "had laced up Springfield like they talked about and no longer had to worry about him snitching to the administration." (*Id.* at PageID.8).

Though the lay in, on its own, cannot by itself constitute an adverse action, it may be considered an adverse action alongside Trott and Sundarrajan's threats of segregation. Plaintiff kept filing grievances after the threats, which shows there was no actual deterrence, but a reasonable jury may be able to find that threats of being placed in segregation alongside the threat of a lay in or termination would deter a person of ordinary firmness from filing grievances. *See Lappin*, 630 F.3d 468 at 472 (it is not "overly difficult" for a plaintiff to show "the level of action or threat necessary to deter a person of ordinary firmness").

    ii. Causation

Defendant McCullough then argues Plaintiff cannot show causation between the grievances and McCullough's hearing decision.

11

"Usually the question of causation is a factual issue to be resolved by the jury, and may be satisfied by circumstantial evidence." *Maben*, 877 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519-20 (6th Cir. 2008)). Under the causation element, the subjective motivation of the decisionmaker is at issue – that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Circumstantial evidence includes "the timing of events or the disparate treatment of similarly situated individuals." *Carter v. Dolce*, 647 F. Supp. 2d 826, 835 (E.D. Mich. 2005) (quoting *Thaddeus-X*, 175 F.3d 399). Disparate treatment – "where one prisoner is punished for conduct that largely goes unpunished" – can be used to demonstrate retaliatory intent as well. *Dalstrom v. Butler*, 2021 WL 1904343 (W.D. Mich. May 12, 2021) (citing *Lappin*, 630 F.3d at 475-76).

"A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King*, 680 F.3d at 695 (citations omitted).

Both parties agree the protected conduct was the "grievances [Plaintiff] previously filed against Food Service Supervisors Trott and Sundarrajan." (ECF No. 43, PageID.350); (ECF No. 43-2, PageID.379). Plaintiff then states the "Adverse action [he] suffered at the hands of Lieutenant McCollough was him . . .

12

still finding [Plaintiff] guilty despite the fact that the . . . standards weren't met . . . to find [him] guilty in those charges." (ECF No. 43-2, PageID.379).

Defendants argue McCollough "had no knowledge of any grievances Springfield had written regarding Food Supervisors Trott or Sundarrajan" and therefore Plaintiff cannot show causation between the two. (ECF No. 43, PageID.351).

But there is a dispute between Plaintiff's allegations against McCollough and McCollough's testimony. Plaintiff says he came into the hearing and said "that this ticket is in retaliation for a grievance that I wrote." (ECF No. 43-2, PageID.381). After these statements, Plaintiff maintains:

> [McCollough] made comments such as "if you want to complain to the administration, this is what you get." He also said, "You got yourself in this situation. Expect more of the same if you continue to be a problem." He later added, "how is the grievance process working out for you so far." There was no way McCullough would have known about the retaliation or my problems with the grievance process unless he was personally involved.

(ECF No. 1, PageID.8).

Plaintiff also states he wrote only three grievances during his time in prison – two of which were about Sundarrajan and Trott, and the third was ten years earlier. (ECF No. 43-2, PageID.381). Plaintiff filed his initial grievances on August 25, 2021. (ECF No. 1, PageID.5). The incident in food service occurred on

13

September 9, 2021, after which Plaintiff again filed grievances. (*Id.* at PageID.6-8). McCullough's hearing was on September 17, 2021. (*Id.*).

McCollough, however, states that he "had no knowledge of any grievances that Springfield had written," and that the above statements are vague. (ECF No. 43, PageID.350); (ECF No. 43-5, PageID.408).

The statements are vague, and could be seen either way. Yet there is some temporal proximity. The events all took place within one month, and though the exact date of Plaintiff's second grievances is unknown, they were filed within two weeks of the hearing. There is also evidence of disparate treatment: Plaintiff was given a misconduct ticket even though Brandon Farnsworth, who was on the same shift as Plaintiff and refused to do any work because the mixer was inoperable, was not fired, nor was he given a misconduct or any form of disciplinary action. (ECF No. 1, PageID.32).

Given that circumstantial evidence may be used to show a causal connection, and all inferences must be drawn in favor of the Plaintiff, Plaintiff has offered evidence disputing whether McCullough knew of Plaintiff's protected activity, and therefore possibly showing a causal connection between Plaintiff's grievances and the hearing. Though Defendant submitted his affidavit, Plaintiff has alleged facts that cast doubt on Defendant's intent.

   3.  Nonretaliatory Bases

Finally, Defendants argue they had legitimate, nonretaliatory reasons for their actions. (ECF No. 43, PageID.352). Even if a plaintiff establishes a prima facie case of retaliation, a defendant is still entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). "[B]are allegations of malice" are insufficient to establish such a constitutional claim. *Thaddeus-X*, 175 F.3d at 399.

As to Sundarrajan and Trott, Defendants claim they had legitimate bases for laying Plaintiff in because Plaintiff could have complied with their order. (ECF No. 43, PageID.352-353). In particular, they say Plaintiff could have made the ordered desserts using the small mixer and the order was reasonable per MDOC policy. (*Id.*). They claim another prisoner made the desserts after Plaintiff refused, though they do not attach evidence to suggest this. (*Id.*).

Plaintiff responds and says it was impossible for him to make the desserts in a small mixer because it could only make 100-150 servings at a time, and producing 3900 servings as ordered would not be possible. (ECF No. 46, PageID.514-515). Plaintiff also claims the small mixer did not have the paddle attachment, which was necessary to make the desired desserts. (ECF No. 43-2, PageID.373). He also claims he did not refuse the assignment but "was trying to get an understanding." (*Id.*). He also claims that no other prisoner made the

15

desserts. (ECF No. 46, PageID.514-515). Finally, Plaintiff attaches the declaration of Brandon Farnsworth. (*Id.*).

It is true that MDOC policy indicates a prisoner should be temporarily laid-in after receiving a misconduct ticket while on a work detail. (ECF No. 43, PageID.354). But it is unclear whether Plaintiff was given the misconduct ticket only because of his refusal to bake. Given Farnsworth's testimony that he did not receive any disciplinary action, it is possible that Trott and Sundarrajan would not have taken disciplinary action if Plaintiff had not filed grievances.

McCullough argues he "would have taken the same action in finding Springfield guilty of the misconduct even if he had known about the grievances Springfield had filed against" Trott and Sundarrajan. (*Id.* at PageID.355). He quotes the MDOC Hearings Handbook, which indicates an unreasonable order is one that would create a significant risk of serious harm, conflicts with a prior effective order, or is not physically possible. (*Id.* at PageID.354). Yet McCullough does not show that these factors are satisfied. Plaintiff argues the order was unreasonable. In response, McCullough claims another prisoner completed the task without issue, but there is no evidence to suggest this. (*Id.* at PageID.355). Nor does McCullough show the other prongs were not applicable. He also says his finding "was based on the evidence against Springfield and nothing more," but he does not identify this evidence. (*Id.* at PageID.356).

16

McCullough therefore does not show he would have taken the same action in the absence of the protected activity, nor is there evidence to suggest as such, particularly given Farnsworth's testimony.

    C.    <u>Qualified Immunity</u>

All defendants argue they are protected by qualified immunity. Qualified immunity shields state actors from liability based on their discretionary acts. *Rodgers v. Hawley*, 14 F. App'x 403, 410 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages"). There is a two-step process for evaluating an assertion of qualified immunity:

> The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." If the first question is resolved in the affirmative, then the court should decide "whether the right was clearly established.

*Gray v. Smith*, 2023 WL 9604959, at *3 (E.D. Mich. Dec. 15, 2023) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In making their qualified immunity argument, Defendants claim Plaintiff cannot demonstrate Trott, Sundarrajan, and McCollough violated any clearly established constitutional right. (ECF No. 43, PageID.358). Even so, this is not

17

the case.  As above, Plaintiff has shown a factual dispute as to his claims. Defendant's qualified immunity claim fails.

Defendant's motion for summary judgment should be denied.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment (ECF No. 43) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 16, 2024.          s/Curtis Ivy, Jr.
                                                               Curtis Ivy, Jr.
                                                               United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 16, 2024.

                                                               s/Sara Krause
                                                               Case Manager
                                                               (810) 341-7850